# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) | Case No.: 1:08-CR-22 |
|  | ) |  |
| EDDIE LAMAR CARLISLE | ) |  |

## OPINION AND ORDER

This matter is before the court for resolution of sentencing issues raised by the defendant, Eddie Lamar Carlisle ("Carlisle"). For the reasons discussed herein, the court concludes that Carlisle will be sentenced to a term of imprisonment of 60 months.

## DISCUSSION

Carlisle pleaded guilty on May 22, 2009, to one count of possessing a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). *See* docket at 48.[1] In exchange for his guilty plea, the United States ("the government") entered into a plea agreement with Carlisle and agreed to move to dismiss a second felony drug count against him that was contained in the indictment in this case. *See* docket at 1 (Indictment) and 46 (Plea Agreement). The U.S. Probation Office prepared a Presentence Investigation Report ("PSIR") and determined that Carlisle had a Total Offense Level of 25 and a Criminal History Category of II. These determinations resulted in a sentencing range of 63 to 78 months under the advisory U.S. Sentencing Guidelines ("USSG"). Pursuant to the plea agreement in this case, the government has recommended that Carlisle be sentenced at the low end of the advisory guideline range, i.e., 63 months. It is also important to note (crucial, in this case, as it turns out) that Carlisle faces a

---

[1] The underlying facts giving rise to the indictment filed against Carlisle were set forth in detail in the court's Opinion and Order denying Carlisle's motion to suppress evidence and need not be reiterated. *See* Opinion and Order, docket at 33.

statutory minimum term of imprisonment of 60 months pursuant to 21 U.S.C. § 841(b)(1)(B). Carlisle acknowledges this fact in his Sentencing Memorandum. Defendant's Sentencing Memorandum, p. 3.

The court originally held a sentencing hearing in this case on September 21, 2009. *See* docket at 53. At that hearing, Carlisle's attorney orally moved for additional time to permit him to file a written brief fully setting forth Carlisle's objections to the PSIR and raising any other sentencing issues he felt were applicable. *Id*. The court granted the oral motion to continue, rescheduled the sentencing hearing for November 10, 2009, and instructed defense counsel to file his brief forthwith. Carlisle's Sentencing Memorandum was filed on November 9, the day before the rescheduled hearing. Docket at 54. On that same date, the government filed its own motion to continue the sentencing hearing since the government had not had an opportunity to file its response to Carlisle's Sentencing Memorandum. That motion was also granted, the sentencing was reset for December 1, 2009, and the government filed its own Sentencing Memorandum ("Government's Response") on November 20, 2009. Docket at 57. The government opposes Carlisle's request for a variance below the advisory guideline range. *Id*. At the hearing on December 1, 2009, the parties briefly reiterated their respective positions. In addition, Carlisle presented two witnesses who testified on his behalf. The first was his mother, who testified that Carlisle suffered from attention deficit disorder as a child and through high school. He managed to graduate from high school with the help of special programs and home schooling. Carlisle, she said, had virtually no relationship with his father while growing up, although the two of them have established a strong relationship recently. Carlisle's grandfather (or perhaps great-grandfather–he was identified both ways at the hearing) also testified. A pastor

living and working in Detroit, he explained that he came to Fort Wayne specifically to aid his grandson and testified that he would permit Carlisle to live with him in Detroit and work in his church once Carlisle was released from custody. Many other family members were also present in the courtroom to demonstrate their support for Carlisle. It was clear that he had an extensive network of family support. Carlisle also made a statement at the hearing, expressing remorse for his crimes, explaining that he has spent the past two years of his incarceration contemplating his actions, and expressing a desire to "change something negative into something positive" once he is released from custody. Finally, Carlisle's attorney argued that the court had the discretion, contrary to the government's assertion, to sentence Carlisle to a term of imprisonment even lower than the statutory mandatory minimum of 60 months, based on several of the considerations listed in 18 U.S.C. § 3553(a). The court concludes that this argument is in error, as discussed below.

In his Sentencing Memorandum, Carlisle invokes § 3553(a) and asks the court to impose "a sentence below the advisory sentencing guidelines." *Id*., p. 1. Carlisle contends that "a variance from the advisory sentencing range" is necessary in this case because a sentence *within* that range "would be 'greater than necessary' to comply with the factors enumerated in 18 U.S.C. § 3553(a)." *Id*.

The task before the court, in every criminal case, is to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in" § 3553. In order to accomplish this goal, § 3553 states that the sentencing court should consider the following factors:

> (1)    the nature and circumstances of the offense and the history and characteristics of

3

the defendant;
    (2)     the need for the sentence imposed–
            (A)     to reflect the seriousness of the offense, to promote respect for the law,
                    and to provide just punishment for the offense;
            (B)     to afford adequate deterrence to criminal conduct;
            (C)     to protect the public from further crimes of the defendant; and
            (D)     to provide the defendant with needed educational or vocational training,
            medical care, or other correctional treatment in the most effective manner;
    (3)     the kinds of sentences available;

. . .

    (4)     [the advisory guideline range];
    (5)     any pertinent policy statement issued by the Sentencing Commission . . .;
    (6)     the need to avoid unwarranted sentence disparities among defendants with similar
            records who have been found guilty of similar conduct; and
    (7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7). The task then, is for the sentencing court to decide what constitutes a sentence that is "sufficient" while "not greater than necessary" to accomplish the traditional goals of criminal sentencing. But those seemingly straightforward and concise words belie the difficult nature of the task facing a court when it is determining what sentence to impose on a criminal defendant. When imposing a term of imprisonment on a defendant, the court must decide, to the best of its ability based on the circumstances of each case, how long that defendant should be deprived of his or her freedom so as to punish the defendant for having committed a serious offense and prevent the defendant from committing offenses in the future. This aspect of sentencing, of course, is aimed at accomplishing the goals of "punishment," "deterrence," and "rehabilitation," three of the important goals of criminal sentencing. At the same time, the court must be mindful of society's interest in being free from the defendant's criminal activities. There can be no doubt whatsoever that when a defendant's offenses involve trafficking in dangerous drugs, the dangers posed to society are substantial indeed. And criminal sentencing

also has the goal of deterring individuals *other than* the defendant from committing similar crimes. Neither a criminal defendant himself nor society at large benefits from sentences that are so inconsequential that they fail to serve as a deterrent to criminal acts. A proverbial "slap on the wrist" not only fails to deter criminal activity, it may serve to encourage it by causing people who might so much as contemplate engaging in criminal behavior to believe that the anticipated rewards they might reap will outweigh any risk involved. Lax sentences make crimes look like reasonable gambles.

While Carlisle presents some argument in his brief that attempts to minimize his involvement in the events that gave rise to his indictment, these factual disputes are not the crux of his argument for a variance. For example, Carlisle contends that he was only present at his cousin's home on the night of February 18, 2008, because he was intending "to hang out in the back bedroom and watch television"; that his possession of a backpack in which crack cocaine was later discovered was merely the result of an "extremely bad choice" on his part; that he was not trying to flee the home when police surrounded it but was merely leaving through the back door; that $320.00 in cash police found on Carlisle's person "was consistent with his [Social Security] disability payments[.]" and so is not proof that he was actually dealing narcotics; that he has a relatively insignificant criminal history (including a "juvenile battery adjudication and an adult OWI."); and that his role in the drug activity that resulted in his arrest "was minimal." *Id*., pp. 1, 11, 12, 20, 16, 25. Carlisle's present attempts to dispute many of the facts concerning what took place on the night he was arrested are not persuasive. The court held an evidentiary hearing in this case on July 25, 2008, to consider the issues raised by a motion to suppress that Carlisle filed. At that hearing, the court heard the testimony of Carlisle as well as several police

officers who were present on the night of February 18, 2008.  Following the hearing, both Carlisle and the government submitted detailed briefs addressing the issues raised.  The court considered all the evidence submitted, read the extensive briefing, and made determinations as to the credibility of the witnesses.  The court concluded, as set forth in the previous Opinion and Order, that the motion to suppress should be denied.  This conclusion was based, at least in part, on the fact that the court found the testimony of the police officers to be credible and Carlisle's testimony to be largely not credible.  *See* Opinion and Order, docket at 33, p. 9.  Carlisle reiterates in his Sentencing Memorandum many of the factual disputes he testified about at the suppression hearing, and the court does not find them any more persuasive today.  While the court concedes, as Carlisle argues in his Sentencing Memorandum, that he was not a "kingpin" or major player in the events that resulted in his arrest, the preponderance of the evidence presented in this case established clearly that Carlisle was hardly an innocent bystander who found himself in the proverbial "wrong place at the wrong time," which is how he attempts to characterize his involvement.  The court does not find Carlisle's attempts to minimize his involvement in the offenses charged in this case convincing, and so they do not provide any basis for a variance below the advisory guideline sentencing range.

As stated above, however, Carlisle's insistence that he was not a major drug trafficker (or a drug trafficker at all, depending on how his protests might be interpreted) is not at the heart of his present request for a variance.  Instead, Carlisle devotes most of his argument in his brief to challenging the disparity in sentences imposed on defendants convicted of "crack" cocaine offenses as opposed to those convicted of offenses involving powder cocaine.  Carlisle's counsel presents a very well reasoned and well supported argument in this regard.  The disparity in

6

"crack" versus powder cocaine cases is quickly coming to the forefront and action by Congress and/or the U.S. Sentencing Commission on this issue is likely to be forthcoming. Until then, it is neither the duty nor the desire of this court to attempt to resolve this issue, which is clearly a legislative one. That stated, it is also clear that this court has discretion when imposing sentences to consider this issue insofar as it results in an unfair disparity in sentences imposed on various defendants. *See, e.g., Kimbrough v. United States*, 128 S.Ct. 558 (2007) and *Spears v. United States*, 129 S.Ct. 840 (2009). Therefore, to the extent that the Sentencing Guideline calculations result in an unfair disparity in the sentences imposed on different defendants, the court may consider variances from those calculations pursuant to § 3553.

In his Sentencing Memorandum, Carlisle cites the Supreme Court's decision in *Spears* and states that "district courts have authority to replace the Guidelines' 100:1 ratio for crack/powder cocaine offenses with its own ratio." Defendant's Sentencing Memorandum, p. 4. Carlisle also points out that the U.S. Sentencing Commission has "issued several reports to Congress criticizing the disparity between crack and powder cocaine [sentencing]." *Id*. (citing several Sentencing Commission Reports to Congress). He also directs the court's attention to a recent directive issued by the United States Department of Justice, wherein Deputy Attorney General David Ogden wrote that "'The President and Attorney General believe Congress should eliminate the sentencing disparity between crack cocaine and powder cocaine.'" *Id*., p. 6 (quoting DOJ's Memorandum to All United States Attorneys, Defendant's Exhibit A). In its Memorandum, the DOJ acknowledges that there has been no action on this issue yet from Congress. The DOJ instructs all U.S. Attorneys to pursue each crack and/or powder cocaine case on an individual basis and further instructs that federal prosecutors, in their discretion, may

decide to "not object to a reasonable variance in an average case." Exhibit A, p. 2.[2] Carlisle concludes by arguing that "[g]iven Mr. Carlisle's minimal involvement in this case, it is just to adopt a different penal theory which permits Mr. Carlisle to be sentenced below the Guideline range and even below the statutory minimum. As the Guidelines are advisory only, the Court can find in the interests of justice, unique to the facts of this case, that Defendant should be ascribed only one criminal history point, and that the replacement ratio of 1 to 1 should be used. Doing so allows the Court to sentence Mr. Carlisle to time served."[3] Defendant's Sentencing Memorandum, p. 24.

---

[2] As further support for his argument for a variance from the Guideline sentence, Carlisle presents other documents that serve to illustrate how the crack versus powder cocaine sentencing issue appears to be reaching a crescendo. For example, Carlisle presents a copy of a statement presented to the Senate Committee on the Judiciary presented by the DOJ's Assistant Attorney General Lanny Breuer on April 29, 2009, in which Mr. Breuer outlines the position of the Obama Administration and the DOJ on this issue. Defendant's Sentencing Memorandum, Exhibit B. He also presents a copy of the "Fair Sentencing Act of 2009," which is proposed legislation introduced by Senator Dick Durbin on October 15, 2009. *Id.*, Exhibit C. The legislation, according to Sen. Durbin and his cosponsors, purports to remedy the crack/powder cocaine sentencing disparity. And, Carlisle presents a copy of a letter written to the Hon. Ricardo Hinojosa on March 17, 2008, by Jon M. Sands, a Federal Public Defender for the District of Arizona, in which Mr. Sands, "on behalf of the Federal Public and Community Defenders," addressed the disparity issue and urges action by the Commission and Congress. *Id.*, Exhibit E. (Judge Hinojosa is the chair of the U.S. Sentencing Commission.)

[3] Carlisle states that as of the date of submission of his Sentencing Memorandum, he had "accrued more than 600 days jail credit" and maintains that that period of incarceration is adequate given his alleged minimal role in the drug trafficking operation that formed the basis for his indictment. *Id.*, p. 1. In addition, he argues that this court has the discretion to reduce his Criminal History Category calculation from a category two to a category one. Doing so would make him eligible for the "safety valve" provision contained in § 3553(f). If Carlisle met the criteria set forth in that statutory subsection, the court would then have the discretion to sentence him to a term of imprisonment below not only the 63-month Guideline range, but even a term below the statutory mandatory minimum of 60 months. But Carlisle's request that the court simply change his Criminal History Category grossly overstates the limits of this court's discretion in matters of sentencing.

Carlisle's counsel has filed a lengthy brief in this case, in which he presents a thorough and thoughtful analysis of the crack versus powder cocaine sentencing disparity issue. But his argument for a variance, especially a variance to a sentence of time served, fails for more than one reason. First, as stated at the outset of this Opinion and Order, Carlisle faces a statutory minimum sentence of 60 months, only three months less than the low end of the Guideline range. Thus, as the government points out in its response brief, the argument before the court essentially comes down to an argument over three months of imprisonment. Government's Response, p. 4. The government readily acknowledges the DOJ's recent directive and also concedes that the issue of crack versus powder cocaine sentencing disparities is being actively debated in legislative, judicial and administrative forums. *Id*., p. 3. However, the government quite correctly points out that in this particular case, argument over that specific issue does nothing to warrant a sentence below the statutory minimum, let alone the imposition of a sentence of time served, as requested by Carlisle. The government states as follows:

> The current state of the law is that district courts must accurately calculate the sentencing guidelines range, resolving contested sentencing issues by a preponderance of the evidence, and, if the district court imposes a sentence outside of the guideline range, there must be an explanation regarding why the defendant deserves a non-guidelines sentence. *United States v. George*, 403 F.3d 470, 472-73 (7th Cir. 2005); *United States v. Dean*, 414 F.3d 725 (7th Cir. 2005). The starting point is therefore a sentence properly calculated under the crack cocaine guidelines. The district court has no authority to sentence a defendant below the statutory minimum sentence unless there is statutory authorization in the form of a motion filed by the government pursuant to 18 U.S.C. § 3553(e) or the defendant meets the safety valve criteria in 18 U.S.C. § 3553(f). . . . Because there will not be any motion filed by the government for substantial assistance pursuant to § 3553(e) and because the Defendant has not met the criteria for the safety valve pursuant to § 3553(f), the Defendant's mandatory minimum sentence is 60 months, and the Court does not have any discretion to sentence the Defendant to a term of imprisonment below that statutory threshold.

*Id*., pp. 2-4. The government is correct. Absent a motion by the government pursuant to §

9

3553(e), which the government states is not forthcoming, and because Carlisle does not qualify for the "safety valve" provision contained in § 3553(f), the court lacks the discretion to impose a sentence below the statutory mandatory minimum. Consequently, since the government has agreed to recommend that Carlisle be sentenced at the low end of the applicable advisory Guideline range, Carlisle has obtained the full benefit available to him under the law, save for a possible reduction of three months off his term of imprisonment–the limit of this court's discretion in this instance.

The government also argues in its brief that Carlisle should be sentenced to 63 months–the originally calculated low end Guideline range. The government acknowledges that it might "appear somewhat pointless for the government to argue about the difference between 60 and 63 months," but maintains that based on the facts and circumstances of this case, Carlisle should not receive a term of any less than 63 months. *Id.*, p. 4. The government argues as follows:

> [Carlisle is attempting to] downplay[] his involvement in the crack operation, claiming to be present at the relevant house just to watch television. . . . Whether or not Carlisle actually cooked the crack cocaine or generated all the cash comprising the $22,000 from the basement, Carlisle was a critical cog in the potential distribution of the drugs in the backpack. At the very least, Michael Chapman enlisted Carlisle's help to hide the drugs from impending seizure by home detention officers; as a result, if successful, Carlisle's help in hiding the drugs was going to be a necessary step in the future distribution of those drugs. Through his guilty plea, Carlisle admitted knowledge of the bag's contents, and it is unrealistic to expect that an uninvolved person would be trusted with such knowledge, especially with police officers present at the house. In the Court's Opinion and Order denying Carlisle's suppression motion, the Court expressed reservations about Carlisle's credibility, and the present self-serving contention about Carlisle simply watching television and being in the wrong place at the wrong time should be viewed with precisely the same skepticism.

*Id.*, p. 5. Again, the court agrees that Carlisle's explanation for his presence at his cousin's

house on the night police officers showed up, uncovered evidence of extensive drug trafficking in the home of a person already on probation for a drug trafficking offense, and seized evidence and made arrests, as he presented it in his own testimony, was simply not credible. In his brief, Carlisle reiterates those same contentions but they are just as unbelievable and unavailing now as they were at the time of the suppression hearing. Accordingly, Carlisle fails to present mitigating factors that might warrant and justify the imposition of a sentence below the advisory guideline range. Carlisle was present in a home in which large quantities of crack cocaine were discovered, along with large amounts of cash and other evidence of extensive drug trafficking (such as scales and other paraphernalia used to weigh and package drugs). Carlisle admitted on cross examination at his suppression hearing, and again at his plea hearing, that he knew the backpack in question contained drugs and that he followed his cousin's instructions to take the bag and exit the home as police officers were attempting–at that very moment–to gain entry into the home. Carlisle claims he was not attempting to flee the scene, but the credible testimony of police officers who observed Carlisle exiting a rear door of the home made it clear that he was doing exactly that. The preponderance of the evidence presented at the suppression hearing revealed that Carlisle was not an innocent bystander on the night of his arrest whose attempts to "watch television" were interrupted by unfortunate events beyond his control.

Finally, the court rejects Carlisle's argument that he should be permitted to take advantage of the "safety valve" provision of § 3553(f), despite the fact that he does not qualify for the benefit of that provision due to his Criminal History Category. Carlisle admits that his prior criminal convictions, including convictions for felony battery and operating while intoxicated, place him in a Criminal History Category II under the Sentencing Guidelines.

11

*See* Defendant's Sentencing Memorandum, pp. 18-19. Carlisle further admits that, as a result of those prior convictions, he does not meet the criteria listed in § 3553(f), which by its express terms applies *only* to defendants whose Criminal History Category is a level I. Despite this admission, Carlisle argues that the court, in the interest of justice, should ignore this fact or, in the alternative, use its "discretion" to reduce his Criminal History Category so that the safety valve provisions would apply. As stated previously, this argument overstates the discretion bestowed on the district courts by *United States v. Booker*, 543 U.S. 220 (2005) and its progeny. While the Supreme Court held in *Booker* that the Sentencing Guidelines are advisory rather than mandatory, that holding did *not* grant the trial courts the authority to completely ignore the Guidelines and it certainly did not authorize the trial courts to ignore mandatory minimum sentences set by statute. Furthermore, even assuming the court had such authority, it would not be exercised in this instance. This is because, as the government argues in its brief, Carlisle's crime is a serious one.

The government maintains that Carlisle "significantly minimized his criminal background" by stating that he "suffered" a juvenile adjudication for battery and had only one adult conviction for operating while intoxicated. Government's Response, p. 6. The government, while conceding that "Carlisle's criminal history is not as severe as some defendants," goes on to explain as follows:

> It is important however to look at several aspects of [Carlisle's] criminal background because he has had prior involvement with firearms and with serious violent behavior. As a juvenile . . . in [a state court proceeding], Carlisle was adjudicated delinquent in May of 2005 for a C felony battery, and in Indiana, battery becomes a C felony if the battery results in serious bodily injury to someone other than the defendant or if the battery is committed by means of a deadly weapon. [Indiana Code] 35-42-2-1. The government also directs the Court's attention to a state drug case in 02-D04-0709-FD-802 that was dismissed

12

> largely due to the expectation by the state prosecutor's office of Carlisle getting a 60 month term of imprisonment in his federal case. In this case, five months before Carlisle's encounter with [police at his cousin's home], police officers found Carlisle with a loaded and unlicensed firearm and about a half a gram of crack cocaine on his person. . . . Simply saying that Carlisle "suffered" a juvenile battery adjudication and an OWI conviction is just not a fair characterization of his background, considering his previous commission of a serious battery offense and his receipt of a significant break on a state case wherein he simultaneously possessed crack cocaine and a handgun.

*Id.*, pp. 6-7 (internal citations to PSIR omitted). Thus, the government argues that Carlisle's attempt to characterize his past criminal activity as simply unfortunate and/or minor is disingenuous. Be that as it may, Carlisle does not deny that he has prior state court convictions and that those convictions place him in a Criminal History Category II under the USSG. He also does not deny that, because of those convictions, he does not qualify for the "safety valve" provision. Carlisle's only argument on this point is that his criminal history is, according to him, not that serious or extensive and so the court should sentence him as if he had a Criminal History Category I. At the most recent hearing, Carlisle's attorney pointed out that the felony battery offense for which Carlisle was convicted occurred when he was a juvenile. Also, counsel explained that the offense involved a large group of men who attacked another man, resulting in bodily injury. In other words, Carlisle was not the only culprit involved in the commission of that offense. Counsel also indicated that the state court did not require Carlisle to pay or even contribute to paying the victim's medical bills, which counsel argued revealed that the court did not consider Carlisle to be the most directly responsible for the victim's injuries. Both sides agree that the only other conviction on Carlisle's record is the felony conviction for operating while intoxicated. Both the government and Carlisle cite the case of *United States v. Johnson*, 580 F.3d 666 (7th Cir. 2009) in support of their respective positions. The government maintains

13

that *Johnson* clearly states that a district court may not sentence a defendant below a statutorily mandated minimum sentence unless the government moves for such a variance by way of a motion under 18 U.S.C. § 3553(e). That section provides that when a defendant provides substantial cooperation and assistance to the government in its investigation and prosecution of criminal activity, the government can, in its sole discretion, file a motion requesting that the court sentence the defendant to a lesser term of imprisonment notwithstanding any otherwise applicable mandatory minimum. As stated above, the government in this case clearly states that no such motion will be filed in this case. The government insists, then, that this court's discretion is limited to reducing Carlisle's sentence by three months, should the court determine after applying the factors listed in § 3553 that any variance should be granted. Carlisle's attorney, however, stated in oral argument at the last hearing that the government's interpretation of the holding in the *Johnson* case was wrong and that the case actually stood for the proposition that a sentencing court could consider the factors enumerated in § 3553 and sentence a defendant to a term *below* the statutory mandatory minimum even if the government did not file a motion for reduction pursuant to § 3553(e). The court finds the language in the *Johnson* case to be quite clear on this point and agrees with the government's interpretation.

In *Johnson*, the defendant pleaded guilty to possession with intent to distribute more than five grams of crack cocaine and possession of a firearm in furtherance of a drug trafficking crime. *Johnson*, 580 F.3d at 666. In that case, unlike the case at bar, the government *did* file a motion under § 3553(e) asking the court to reduce Johnson's sentence below the statutory minimum as a result of his substantial assistance to the government. *Id*. Johnson then argued that the court should do even more, and reduce his sentence even further based on the sentencing

14

factors listed in subsection (a) of 3553. *Id*. at 672. The district court refused to do so, believing it lacked such broad discretion, and Johnson appealed that issue (among others). The Seventh Circuit affirmed the district court's conclusion. The appellate court held that Johnson's argument "ignores that without the statutory mandate in § 3553(e), the district court *would have no authority to depart below the statutory minimum* in his case." *Id.* at 673 (italics added). The court stated further that "'[n]othing in the reasoning of *Booker* expands the authority of a district court to sentence below a statutory minimum.'" *Id*. (quoting *Williams v. United States*, 474 F.3d 1130, 1132 (8th Cir. 2007)). Similarly, in the present case, since Carlisle admits he does not qualify for the safety valve provision contained in § 3553(f), and since the government has not filed (and states that it *will not* file) a motion under § 3553(e), this court lacks a statutory mandate to sentence Carlisle below the mandatory minimum term of 60 months.

The court concludes (and the parties do not dispute) that Carlisle's Sentencing Guideline range of 63 to 78 months has been calculated properly. This court's duty, then, is to accept that range as the applicable sentencing range, unless by a preponderance of the evidence the court determines that a variance is warranted. After considering all the evidence and argument presented in this case in the course of several hearings and extensive briefing, the court concludes that the evidence and circumstances in this case support Carlisle's request for a variance below the applicable guideline range. Given the circumstances in this case, the court concludes that the goals and objectives of criminal sentencing as set forth in § 3553 are met by the imposition of a term of imprisonment of 60 months, the statutory mandatory minimum. A term of 60 months adequately reflects the seriousness of the offense involved in this case, promotes respect for the law and provides just punishment for the offense; affords adequate

15

deterrence to criminal conduct; and serves to protect the public from further crimes by this defendant. The court also bases this determination on a consideration of Carlisle's comparatively limited criminal history,[4] the remorse he demonstrated before the court at the most recent sentencing hearing, his extensive network of family support, and because the court believes that a term of imprisonment of 60 months is sufficient, but not greater than necessary, to accomplish the goals of sentencing as to this particular defendant under the particular circumstances in this case.

**CONCLUSION**

For the reasons discussed above, the defendant, Eddie Carlisle, shall be sentenced to a

---

[4] While the government argues that Carlisle is attempting to minimize his criminal history, the fact remains that Carlisle has only two prior convictions–the juvenile conviction for battery which, it turns out, was the result of a melee involving 30 or more boys and men attacking an individual as opposed to Carlisle alone doing so–and one conviction for operating a vehicle while intoxicated. These are serious offenses, certainly, but the court nonetheless finds that Carlisle's criminal history is not so severe that he should serve a term of imprisonment on the present charge that exceeds the statutory minimum of 60 months. Five years is a long time to spend in a federal prison and is a sufficiently long time to achieve the traditional goals of criminal sentencing, especially if Carlisle is sincere in his desire to change the path of his life once he is released.

term of imprisonment of 60 months.

Dated: December 7, 2009.

    /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana